**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **PARIS LAMONT DENNIS,** | § | |
| **Movant,** | § | |
| | § | **EP-24-CV-157-LS** |
| **v.** | § | **EP-19-CR-1357-LS-1** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Paris Lamont Dennis, federal prisoner number 29891-480, challenges his sentence through an amended *pro se* motion under 28 U.S.C. § 2255. Am. Mot. to Vacate, ECF No. 260.[1] His opposed motion is denied for the following reasons.

**BACKGROUND AND PROCEDURAL HISTORY**

Dennis is a 42-year-old prisoner serving a 293-month sentence for a drug trafficking offense. J. Crim. Case, ECF No. 246. He is confined at the Federal Correctional Institution in Phoenix, Arizona. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. No. 29891-480, last visited May 20, 2025). His projected release date is January 23, 2040. *Id*.

During the evening of November 17, 2017, Dennis delivered cocaine to his friends Montana and Raelynn Otero at their house in El Paso, Texas. Plea Agreement, ECF No. 232 at 9. When he returned the following day, he found both unresponsive. *Id*. He called 911 and shortly thereafter the first responders arrived and pronounced both Oteros dead. *Id.* Some of the cocaine Dennis delivered to them was found on their kitchen table. *Id*. A medical evaluation of the Oteros

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in EP-19-CR-1357-LS-1. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

concluded that they "died from accidental overdose, with toxic levels of cocaine in their system, which was a contributing factor in their deaths." *Id.*

Dennis was indicted for conspiring to possess cocaine (Count One), distributing a substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide) and cocaine which resulted in the victims' deaths (Count Two), possession with intent to distribute cocaine (Count Three), and possessing a firearm while knowing he had a prior conviction for a felony (Count Four). Superseding Indictment, ECF No. 30.

Dennis eventually pleaded guilty, pursuant to a plea agreement, to a felony information charging him with distributing a "mixture containing a detectable amount of Cocaine" which "resulted in serious bodily injury" in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Information, ECF No. 230. Unlike the superseding indictment, the information did not allege that fentanyl contributed to the Oteros' deaths. The Court sentenced Dennis to 293 months of imprisonment, the top of the sentencing guideline range. J. Crim. Case, ECF No. 246; Statement of Reasons, ECF No. 247. He appealed but on the advice of his appellate counsel moved to dismiss his appeal. J., ECF No. 256.

Dennis now raises four ineffective-assistance-of-counsel claims in his § 2255 motion. Am. Mot. to Vacate, ECF No. 260. First, he asserts his trial counsel failed to adequately explain the terms of the plea agreement. *Id.* at 4. Second, he claims his trial counsel failed to fully investigate any possible defenses. *Id.* Third, he maintains his trial counsel failed to present mitigation evidence at sentencing to establish that the cocaine was not the cause of the victims' deaths. *Id.* at 5. Finally, he contends his appellate counsel improperly advised him that his claims of error were best raised in a § 2255 motion. *Id.* at 7. He asks the Court to "[s]et aside the previously imposed conviction

and sentence, and thereafter set the matter for further proceedings." *Id.* at 12.

## STANDARD OF REVIEW

Section 2255 "provides the primary means of collateral attack on a federal sentence." *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quoting *Cox v. Warden*, 911 F.2d 1111, 1113 (5th Cir. 1990)). But "it does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). It is not a "substitute for direct appeals." *United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating "[w]here the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice.'"). There are four grounds on which a prisoner may obtain relief: (1) the "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). Consequently, § 2255 does not permit relief on a claim of error that is neither constitutional nor jurisdictional unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). It also requires the prisoner to bear the burden of establishing a claim of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (citing *United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980)). It permits a court to "vacate and set the judgment aside" if a prisoner's claims are meritorious and to "discharge the prisoner or resentence him or grant [him] a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Rule 4 of the Rules Governing

Section 2255 Cases allows a court to dismiss the petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." *See also United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence—and not necessarily direct evidence—that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

Despite these limitations, a prisoner may still bring a Sixth Amendment "ineffective-assistance-of-counsel claim … in a collateral proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 504 (2003). If he does, his claim is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, he has the burden of showing (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish deficient performance, he must prove that his counsel's assistance fell "below an objective standard of reasonableness." *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting *Strickland*, 466 U.S. at 688). In other words, he must show his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Lincks*, 82 F.4th 325, 330–31 (5th Cir. 2023). "[T]o establish prejudice, [he] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694). In a guilty-plea situation, the defendant must show that there is a reasonable probability that but for his counsel's errors he would

4

not have pleaded guilty and would have insisted on going to trial. *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

## ANALYSIS

### A. Ineffective Assistance of Counsel – Failure to Explain Plea Agreement

Dennis first claims that his plea was neither knowing nor voluntary because his trial counsel failed to adequately explain its terms, including the "full extent of [his] sentencing exposure." Am. Mot. to Vacate, ECF No. 260 at 4. He complains that "[h]ad [his counsel] taken the time to fully explain the terms and conditions of the plea agreement, along with what the United States would have been required to prove in order to obtain a guilty verdict at trial, [he] would have rejected the plea offer and proceeded to trial." Mem. in Supp., ECF No. 261 at 12.

A defendant "charged with the commission of a criminal offense … [has] the 'right to a speedy and public trial, by an impartial jury.'" *Gannett Co. v. DePasquale*, 443 U.S. 368, 379 (1979) (quoting U.S. CONST. amend. VI). "[A] defendant may waive [his] right to a jury trial, provided that [he] does so voluntarily, knowingly, and intelligently." *Pierre v. Leger*, 495 F. App'x 403, 406 (5th Cir. 2012); *see also Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989) ("[F]or a guilty plea to be constitutionally valid, it must be voluntary and knowing."). "To be knowing and intelligent, the defendant must have 'a full understanding of what the plea connotes and of its consequence.'" *United States v. Hernandez*, 234 F.3d 252, 255 (5th Cir. 2000) (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). But "[t]he defendant need only understand the direct consequences of the plea; he need not be made aware every consequence that, absent a plea of guilty, would not otherwise occur." *Id.* (citing *Trujillo v. United States*, 377 F.2d 266, 266 (5th Cir. 1967).

"Where … a defendant … enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Still, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no [adverse] effect on the judgment." *Strickland*, 466 U.S. at 691.

"Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Courts should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). Additionally, courts "generally will not allow a defendant to contradict his testimony given under oath at a plea hearing." *United States v. McDaniels*, 907 F.3d 366, 371 (5th Cir. 2018).

Furthermore, "there must be independent indicia of the likely merit of the petitioner's contentions, and mere contradiction of his statements at the guilty plea hearing will not carry his burden." *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986). This requires "specific factual allegations," typically "supported by the affidavit of a reliable third person." *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985).

The maximum penalty for Count Two of the superseding indictment, charging Dennis with distributing fentanyl and cocaine resulting in the Oteros' deaths, was life imprisonment. Superseding Indictment, ECF No. 30; 21 U.S.C. § 841(b)(1)(C). Dennis rejected an early plea offer in which the government would recommend a 360-month sentence. *Frye* Hearing Tr., ECF No. 253 at 3:1-17, 12:1-21. He then rejected a subsequent plea offer providing for a government

recommendation of a 300-month sentence. Evidentiary Hearing Tr., ECF No. 81 at 5:23–6:7; and Ex. 6, ECF No. 78 at 13. He ultimately agreed to plead guilty to a one-count information charging him with distributing cocaine which resulted in serious bodily injury to the Oteros in exchange for the government's recommendation of a 240-month sentence. Addendum to Plea Agreement, ECF No. 233 at 1. Dennis's repeated back-and-forth with the government during the plea-bargaining reflects that he understood the "full extent of [his] sentencing exposure." Am. Mot. to Vacate, ECF No. 260 at 4. It also reflects that his decision to plead guilty to the information pursuant to the final plea agreement was both knowing and voluntary.

Additionally, Dennis's plea agreement states clearly that "the range of punishment for [his] offense is a term of imprisonment, which may not be less than 20 years or more than life, a fine not to exceed $20,000,000, a term of supervised release of at least 10 years, and a $100 special assessment." Plea Agreement, ECF No. 232 at 2. It further explained that by entering into this agreement, Dennis was waiving his right to appeal his sentence:

> Defendant waives the right to challenge the sentence imposed, knowing that the sentence has not yet been determined by the Court. Defendant is aware that any estimate of the sentencing range received from defense counsel, the Government or the Probation Office, is not a promise, did not induce the guilty plea or this waiver, and does not bind the Government, the Probation Office, or the Court. In other words, Defendant understands that Defendant cannot challenge the sentence imposed by the District Court, even if it differs substantially from any sentencing range estimated by Defendant's attorney, the attorney for the Government, or the Probation Officer. Realizing the uncertainty in estimating what sentence Defendant will ultimately receive, Defendant knowingly and voluntarily waives the right to appeal the sentence or to contest it in any post-conviction proceeding in exchange for the concessions made by the Government in this Agreement, except as otherwise provided herein.

*Id.* at 5. It also warned Dennis that "[b]y signing the Plea Agreement, [he] admits that the facts set out in the attached factual basis as alleged by the Government are true and correct." *Id*. at 6. The

agreement's factual basis explained that Dennis gave the Oteros the cocaine which contributed to

their deaths:

> On November 17, 2017, … Mr. Dennis gives Montana and Raelynn [Otero] a use amount of cocaine. Mr. Dennis leaves and does not return to the Oteros' residence until later in the day on November 18, 2017, at which time he finds Montana and Raelynn unresponsive. Mr. Dennis calls 911 and shortly thereafter first responders arrive on-scene. Montana and Raelynn are pronounced dead. … The Medical Examiner's Office declares that Montana and Raelynn died from accidental overdose, with toxic levels of cocaine in their system, which was a contributing factor in their deaths.

*Id.* at 9.

During his plea hearing, Dennis engaged in the following colloquy, under oath, with the

Court:

> THE COURT: Have you had enough time to talk to your lawyers about your case -- to discuss your case with your lawyers?

> THE DEFENDANT: Yes, sir.

> THE COURT: Did you also have enough time to discuss the plea agreement documents in your case? And, by that, I mean two documents: The one document that is captioned "Plea Agreement" and the second document that is captioned "Sealed Addendum to the Plea Agreement." Did you have enough time to go over those documents with your lawyer?

> THE DEFENDANT: Yes.

> THE COURT: Was anything offered to you to induce you to plead guilty in your case? That is, anything offered to you to make you plead guilty in your case that was not part -- that was not included in those documents that I just described?

> THE DEFENDANT: No, sir.

> THE COURT: Is anyone forcing you into pleading guilty in your case?

> THE DEFENDANT: No, sir.

> THE COURT: Are you satisfied with the work your lawyers have done for

you up to this point in your case?

   THE DEFENDANT: Yes, I am.

   ****

   THE COURT: I have gone through the rights that you have that you are giving up by pleading guilty. You have told me you are here today voluntarily. You have told me you understood the allegations the government is making against you. And you, you know, told me that you understand the maximum penalties you face. So with that in mind, this is what I need to know: Do you still want to plead guilty in your case, yes or no?

   THE DEFENDANT: Yes.

Plea Tr., ECF No. 255 at 6:5–7:1; 10:9–17.

It is well settled that a defendant's solemn declarations in open court are presumed to be true, and normally a defendant may not recant sworn testimony at a plea proceeding. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998); *Fuller*, 769 F.2d at 1099; *United States v. Sanderson*, 595 F.2d 1021, 1022 (5th Cir. 1979).

Dennis now argues that "the United States having no evidence that Dennis distributed fentanyl coupled with the toxicology results, would have served to plant the seed of reasonable doubt into the minds of jury as to Dennis's involvement in the victims' deaths." Mem. In Supp., ECF No. 260-1 at 11–12. But the government would have presented evidence at trial establishing that Dennis distributed cocaine laced with fentanyl. (*See, e.g.*, Gov't's Resp. to Def.'s Second Mot. in Limine, ECF No. 212 at 12 ("[T]he witness will testify to an admission against interest made by [Dennis] in her presence, that his cocaine was of superior quality since he cut it with fentanyl.")).

Dennis rejected two plea offers before entering into the plea agreement in which he

admitted that his cocaine caused the overdose deaths at issue. He also swore during his plea colloquy that he had enough time to discuss his case and the plea agreement with his lawyers and that he was satisfied with the work they had done for him. Accordingly, the Court finds that Dennis had "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998). The Court also finds that Dennis had "a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244. Additionally, the Court finds that Dennis "voluntarily, knowingly, and intelligently" waived his right to a trial by a jury. *Pierre*, 495 F. App'x at 406. Finally, the Court finds that Dennis's counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 56. Consequently, Dennis has not met his burden to show that his counsel's performance with respect to explaining the terms of his plea agreement was either deficient or prejudiced his cause. *Strickland*, 466 U.S. at 687.

### B.  Ineffective Assistance of Counsel - Failure to Investigate

Dennis claims that his counsel failed to fully investigate his possible defenses. Am. Mot. to Vacate, ECF No. 260 at 4. Specifically, he asserts that his counsel did not investigate his claim that he did not provide the fentanyl, which he contends caused the deaths of Montana and Raelynn Otero:

> [T]he Court was presented with a defendant who sold cocaine to his friends and then mixed that drug with MDMA and fentanyl - that they got from someone else. The mixing of the drugs was done without Dennis's knowledge or involvement. No question the events that transpired were tragic. End resulted in two people losing their life. But that does not mean that Dennis was responsible - the medical examiner said as much.

Mem. in Supp., ECF No. 261 at 14.

10

A defendant's "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *United States v. Scott*, 11 F.4th 364, 370 (5th Cir. 2021), (quoting *Strickland*, 466 U.S. at 691). When a defendant asserts that his counsel failed to investigate, he "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir.1993). But once a defendant's "guilty plea has been entered, all non-jurisdictional defects in the proceedings against a defendant are waived. This includes all claims of ineffective assistance of counsel … *except* insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (citations omitted); *see also Hill* 474 U.S. at 57. Accordingly, because Dennis's guilty plea was voluntarily and knowingly made, he cannot now assert the ineffective assistance of his counsel for their alleged failure to further investigate the causes of the victims' deaths.

Furthermore, Dennis's defense team, led by Assistant Federal Public Defender Manuel Acosta-Rivera ("Acosta"), maintains that the team thoroughly investigated numerous avenues of defense, including whether the government could establish that Dennis's distribution of the cocaine was the but-for cause of the victims' deaths. Gov't Resp., Ex. 1 (Aff. of Manuel Acosta-Rivera), ECF No. 268-2 at 1 (citing *Burrage v. United States*, 571 U.S. 204, 211 (2014) ("'In the usual course,' this requires proof 'that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct.'") (quoting *University of Tex. Southwestern Medical Center v. Nassar*, 570 U.S. 338, 346–47 (2013) (quoting Restatement of Torts § 431, Comment a (1934)). Acosta explains that Dennis wanted his defense aligned with his contention that he did not sell fentanyl to the victims.

Based on the evidence provided in discovery, as well as uncovered as part of our investigation, we determined the government would likely be able to prove at trial that Mr. Dennis distributed a quantity of cocaine to the victims in this case. However, we felt the Government had very little compelling evidence that Mr. Dennis distributed fentanyl, which was the "But-For" cause of death according to the Government's own retained toxicologist, Dr. Stacey Hail. Furthermore, we believed the cocaine [Dennis] provided was consumed much earlier than the fentanyl that caused the death of the victims. Our team communicated this information to Mr. Dennis on multiple occasions, and it was one of several potential defenses we considered presenting if this matter had gone to trial. Mr. Dennis was in agreement this was a defense he wanted considered, as it aligned with his contention that he did not sell fentanyl to the victims.

*Id.* at 1–2.

As early as the preliminary hearing in this case, Dennis's defense team led by Acosta concluded the government would have difficulty proving that Dennis knowingly provided fentanyl to the victims.

> MR. ACOSTA: Did anybody say it was my client that provided the cocaine laced with fentanyl?
>
> AGENT DILMORE: Not the cocaine laced with fentanyl, but he provided cocaine that night.
>
> MR. ACOSTA: Okay. There is a difference there, correct? The cocaine that killed those people was the cocaine laced with fentanyl, correct? Is that a yes?
>
> AGENT DILMORE: Yes.
>
> ****
>
> MR. ACOSTA: You just testified that [Dennis] had provided the cocaine, correct?
>
> AGENT DILMORE: Yes.
>
> MR. ACOSTA: Not the cocaine laced with fentanyl?

       AGENT DILMORE: I'm not sure if the cocaine he provided was the cocaine laced with fentanyl. I didn't seize that cocaine. I'm not sure if that's the same cocaine.

       MR. ACOSTA: I understand that. You have witnesses, right? None of the witnesses said my client was the one that provided the cocaine laced with fentanyl, correct?

       AGENT DILMORE: All I know is the witness stated that Paris Lamont Dennis provided the cocaine the night the two died.

       MR. ACOSTA: But nobody knows if it is the cocaine laced with fentanyl. It is what I am trying to get at. Correct?

       AGENT DILMORE: Right.

Preliminary Hearing, ECF No. 17 at 20:3–21:6.

At a *Frye* hearing,[2] Acosta explained that Dennis rejected the government's initial plea offer because "[o]ne of the things that [the government] does not present to the Court … is whether or not the fentanyl was provided by my client." *Frye* Hearing, ECF No. 253 at 12:5-7.

Then, Acosta filed a motion to dismiss Count Two, which squarely placed the issue before the Court.

> Count Two fails to state a claim because it does not allege Mr. Dennis distributed controlled substances he knew to be cocaine and fentanyl, which resulted in the deaths of R.O. and M.O. Mr. Dennis recognizes that current Fifth Circuit law does not require a defendant to know the type of drug triggering an aggravated offense, but this law is ripe for review. He raises this argument to preserve it for further review.

---

[2] *Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.").

Def.'s Mot. to Dismiss, ECF No. 92 at 1.

As the defense team prepared for trial, it filed a first motion in limine premised on the government's inability to prove that Dennis distributed fentanyl. *See* Def.'s First Mot. in Limine, ECF No. 168 at 1. It claimed "evidence that Mr. Dennis knowingly distributed a controlled substance that resulted in his friends' deaths—the offense charged in Count Two—is weak." *Id.* In a second motion in limine, it sought to exclude both expert testimony and potential speculation that Dennis supplied cocaine that was cut with fentanyl. Second Mot. in Limine, ECF No. 182 at 1, 3. It also directly discussed the issue of but-for causation in a motion raising a *Daubert* challenge to the anticipated testimony of an expert witness, Dr. Stacey Hail. Def.'s Mot. for Daubert Hearing, ECF No. 191.

There is, therefore, substantial evidence in the record that Dennis's defense team understood the importance of but-for causation in preparing for trial, recognized that the government would have difficulty establishing at trial that Dennis distributed fentanyl, and sought to capitalize on that perceived weakness in the government's case. Contrary to Dennis's contention that "[c]ounsel failed to fully investigate the possible defenses," the record establishes that his defense team exhaustively investigated and litigated the fentanyl and but-for causation issues. Consequently, Dennis fails to meet his burden to show that his counsel performed deficiently by failing to investigate. He also fails to specify any alternative investigative paths not taken that would have altered the case's outcome. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."). This claim fails.

### C. Ineffective Assistance of Counsel - Sentencing

Dennis maintains that his counsel failed to present mitigating evidence at his sentencing that fentanyl, not cocaine, caused the Oteros' deaths. Am. Mot. to Vacate, ECF No. 260 at 5. Further, he claims that the government had no evidence, and could not prove, that he supplied the fentanyl:

> Given that the toxicology report established that the "but for" cause of death was fentanyl and the plea agreement required Dennis to stipulate to the cause being cocaine it would have been "rational" for Dennis to reject the plea and proceed to trial. … At trial, the United States having no evidence that Dennis distributed fentanyl coupled with the toxicology results, would have served to plant the seed of reasonable doubt into the minds of jury as to Dennis's involvement in the victims' deaths. As explained by the Supreme Court in *Burrage* to sustain a guilty verdict at trial the United States would have been required to prove "that the specific drug underlying a defendant's violation of §841(a) is the same drug that was but for cause of the victim's death." See: *Burrage v. United States*, 571 U.S. 204, 218–19 (2014). This is a burden that could not have been met in this case. At best the evidence established that Dennis participated in the distribution of cocaine and nothing more.

Mem. in Supp., ECF No. 261 at 11.

"Informed strategic decisions of counsel are given a heavy measure of deference and will not be second guessed." *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). Likewise, "a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance." *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) (citing *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994)). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with

obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quotations omitted).

Dennis pleaded guilty, pursuant to a plea agreement, to a felony information charging him with distributing a "mixture or substance containing a detectable amount of Cocaine" which resulted in "serious bodily injury." Information, ECF No. 230. Unlike the superseding indictment, the information did not mention that fentanyl contributed to the Oteros' deaths. The factual basis in the plea agreement supported Dennis's plea:

> Mr. Dennis now admits and affirms that on or about November 18, 2017 in the Western District of Texas, he knowingly distributed cocaine, a Schedule II controlled substance, to Montana Otero and Raelynn Otero, and the use of that cocaine caused serious bodily injury to Montana Otero and Raelynn Otero.

Plea Agreement, ECF No. 232 at 9. At his plea hearing, Dennis agreed that the cocaine he distributed to the Oteros caused them "serious bodily injury." Plea Tr., ECF No. 255 at 11:24–12:6.

Instead of attacking the factual predicate for Dennis's guilty plea, his defense team made the tactical choice to present sentencing arguments showing that Dennis's mother was addicted to crack cocaine and often left her children to fend for themselves. Def.'s Sent. Mem., ECF No. 239 at 1. The team also argued that Dennis was eventually separated from his siblings and placed in foster care where he experienced physical and emotional abuse. *Id.* at 1–2. They also showed that after Dennis was briefly reunited with his mother, he was sold by her to another woman who collected his benefits before she threw him out of her house. *Id.* at 2. The sentencing court also learned that Dennis was left to completely fend for himself before he became a teenager, and he was forced to support himself by selling drugs. *Id.* His defense team reiterated these claims during

16

the sentencing hearing and impressed on the Court that both the government and the victims'
family agreed that a 240-month sentence was appropriate under the circumstances. Sentencing Tr.,
ECF No. 251 at 8:17–10:8, 12:23-13:3.

At the conclusion of the government's sentencing argument, the Court noted bluntly that it
believed that a 240-month sentence was too "low," and it took exception to Dennis' attempts to
disclaim responsibility for the victim's deaths:

> Mr. Dennis, let me tell you something. I'll tell you – I'm looking at you
> straight in the eye. I was very disturbed when you said "my mistake." This ain't no
> mistake here. This is the result of a course of conduct. In other words, your
> choosing. You made a choice to keep living your life this way.
>
> When this happened, you knew really well -- I mean, I knew it and I'm not
> in the business, and I knew it that fentanyl-laced cocaine was out there, was
> flooding the streets, so to hear, you look at me straight in the eye and say this is the
> result, or words to the effect that this is a mistake is very disturbing. Worse yet,
> after every single sentence you received, you kept blowing and going.
> Unacceptable.

*Id*. at 13:5–17. The Court then sentenced Dennis at the high end of the sentencing guideline range,
293 months of imprisonment. *Id.* at 13:17.

The Court observes that "[b]ecause advocacy is an art and not a science, and because the
adversary system requires deference to counsel's informed decisions, strategic choices must be
respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S.
at 681. Moreover, as the record reflects that the sentencing court would have looked even more
askance at a sentencing argument premised on attacking the factual predicate for guilty plea itself,
Dennis cannot show that his counsel's strategic decision to emphasize Dennis's troubled childhood
during sentencing somehow prejudiced his cause.

17

### D.  Ineffective Assistance of Counsel: Appeal

Finally, Dennis contends his appellate counsel improperly advised him that his claims of error were best raised in a § 2255 motion. Am. Mot. to Vacate, ECF No. 260 at 7. He maintains his "[c]ounsel's improper advisement led [him] to make the uninformed decision to dismiss his timely filed direct appeal. *Id.*

A movant must satisfy both requirements set out in *Strickland* to prevail on an ineffective-assistance-of-appellate-counsel claim. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (citing *Strickland*, 466 U.S. 668). He must demonstrate (1) his appellate counsel's performance was deficient, and (2) the deficiency prejudiced his appeal. *Id.* at 285. To satisfy the first requirement—that there was a deficiency on the part of counsel—he must show "that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Id.* at 285. To satisfy the second requirement—that counsel's errors were prejudicial—a movant must show that, but for appellate counsel's deficient performance, he would have prevailed on appeal. *Id.* at 285–86. Thus, "it is difficult to demonstrate that counsel was incompetent." *Id.* at 288 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

Dennis's appellate counsel asserts that "[a]fter reviewing the entire appellate record, [she] realized that the universe of potential appellate issues was limited because Dennis had pleaded guilty pursuant to a plea agreement with an appeal waiver." Gov't Resp., Ex. 2 (Aff. Of Judy Madewell), ECF No. 268-3 at 1. She saw nothing in the record that could be used to challenge the voluntariness of Dennis's guilty plea nor the factual basis for it. *Id.* at 2. She added:

> I explained that the Fifth Circuit Court of Appeals generally will not address an ineffective assistance of counsel claim on direct appeal unless it is clear from the record. And that raising such an issue on direct appeal could result in a negative

18

> ruling on the merits that could impact later challenges. I told Mr. Dennis that I did not believe that I could raise on direct appeal the issues he identified...I advised Mr. Dennis that he could pursue those claims by requesting relief under 28 U.S.C. § 2255. I explained that as part of a § 2255 petition, he could provide affidavits and request an evidentiary hearing. … After our discussions, Mr. Dennis told me that he wanted to dismiss his appeal.

*Id.* at 3.

Dennis "is only entitled to collateral relief if … counsel's failure to raise the issue was below reasonable professional standards." *United States v. Merida*, 985 F.2d 198, 202 (5th Cir. 1993). As Dennis identifies no viable appellate issue that went unasserted based on his appellate counsel's advice, he cannot demonstrate that counsel's performance was deficient or caused him prejudice. *Id.* Indeed, he offers no argument whatsoever in this regard.

## EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). The record in this case is adequate to dispose fully and fairly of Dennis's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). He may not receive a certificate of appealability unless he "has made a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2). He "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*,

529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in a § 2255 proceeding). Here, reasonable jurists would "not disagree with the [Court's] resolution of [Dennis's] constitutional claims" nor "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

## CONCLUSIONS AND ORDERS

The Court concludes that Dennis has failed to meet his burden of showing both (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. The Court further concludes Dennis has failed to assert claims establishing (1) "his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *Seyfert*, 67 F.3d at 546. The Court also concludes that Dennis is not entitled to a hearing or a certificate of appealability. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Movant Paris Lamont Dennis is **DENIED** an evidentiary hearing.

**IT IS FURTHER ORDERED** that Movant Paris Lamont Dennis's amended *pro se* "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" [ECF No. 260] is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Movant Paris Lamont Dennis is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SIGNED** this 21st day of May 2025.

_____
**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**